MEMMLER *vs.* THE STATE OF GEORGIA.

1. Where an indictment charged a husband with the offense of whipping, beating and cruelly maltreating his wife, there was no error in allowing several witnesses to testify to several distinct beatings within two years prior to the indictment.   It was error to require counsel for the state to elect one of these transactions on which he would rely, and when the election was made, to rule out all evidence in relation to the other transactions, but this was an error against the state of which the defendant could not complain.

(*a.*) If a *certiorari* was properly dismissed, the judgment will not be reversed, though the court based it upon an erroneous reason.

2. If the defendant in a criminal case, in which he was charged with beating his wife, examined her as a witness, without objection from counsel for the state, the latter were entitled to impeach her credit in any of the modes prescribed by law, including the making of contradictory statements, proper foundation therefor first being laid.

3. The remarks of counsel in respect to the purpose and effect of impeaching testimony were legitimate and proper, and there was no error in refusing to check him therein.

4. The right of peremptorily challenging jurors does not exist in trials in the county court, but the defendant can only get rid of a juror by showing him subject to legal exception on examination by the court on his *voire dire*, in which event he is set aside for cause, and his place is supplied by a talesman. In this case, the juror, although he had once had some trivial misunderstanding with the defendant, had not formed or expressed any opinion as to his guilt or innocence from having heard any of the evidence under oath, had no bias or prejudice for or against him, and was perfectly impartial between him and the state.

5. Where a criminal case has been tried in the county court, and a *certiorari* is applied for, no writ shall be granted unless the accused shall first have filed his affidavit setting forth that he has not had a fair trial, and that he has been wrongly and illegally convicted, and unless the applicant shall give bond or make an affidavit *in forma pauperis*. The requirement as to the time and manner of executing the bond is not clear; but if it accompanies the application for the writ, and the judge of the superior court approves it, that would be sufficient; and *semble*, that if no bond accompanies the application, but the judge of the superior court grants a *certiorari* upon the applicant's giving bond, and the bond thereupon is given and the writ issued, this would be sufficient.

December 22, 1885.

Criminal Law. Wife-beating. Witness. Impeachment. Husband and Wife. Attorney and Client. Jury and Jurors. County Court. Before Judge Fain. Bartow Superior Court. January Adjourned Term, 1885.

Reported in the decision.

Graham & Graham, for plaintiff in error.

J. W. Harris, Jr., solicitor general, by Robert B. Trippe; J. J. Conner; A. S. Johnson, for the state.

v 75-37

HALL, Justice.

The defendant was charged by the grand jury of Bartow county with the offense of whipping, beating and cruelly maltreating his wife. The bill of indictment was transferred by the superior court to the county court, and on his trial in that court, he was found guilty and sentenced to pay a fine of three hundred dollars and cost, and in the event of his failure to pay said fine, he was ordered to the chain-gang to labor on the public works for the space of twelve months. He sought to remove this sentence and conviction by writ of *certiorari* to the superior court. The writ was ordered to issue previous to his giving, or attempting to give, bond, as required by section 302 of the Code. The court, in ordering the writ, directed it to issue and operate as a *supersedeas* upon the applicant for *certiorari* giving bond in the sum of two hundred dollars, conditioned for his appearance to answer the final order, judgment and sentence of the court. The order for the writ was signed on the 4th of November, 1884; the bond was given on the 13th day of the same month, and was, together with the petition and sanction of the judge, filed in the clerk's office of the superior court two days thereafter, when the writ issued and was served on the county judge, who answered the same. When the cause came on for a hearing in the superior court, it was, on motion of the state's counsel, dismissed, and the sentence and judgment of the county court thereby affirmed. The ground on which the motion to dismiss was made, and upon which the judgment dismissing it was placed, is that "no bond, such as is required by section 302 of the Code, was given by the plaintiff in *certiorari* previous to the order directing the writ to issue."

1. If this result would have followed, and the *certiorari* should have been dismissed for other controlling reasons, then it would be quite immaterial whether a right or wrong reason be given for the action of the court. No practi-

cal result could be attained by the correction of a techni-cal or immaterial error, admitting that one was committed, of which, however, we are not satisfied. But we are fully convinced, from the facts disclosed by this petition, that it should not have been sanctioned, and were there any doubt from the petition itself upon that subject, the doubt was dispelled by the judge's answer to the writ. The only error that we find among the numerous assignments made by the petition was against the state. Several witnesses testified to distinct beatings given his wife by the husband at no great intervals apart, but all within two years before the indictment was found, and no two of them witnessed the same cruel mistreatment. The judge of the county court, over objection offered by the defendant, permitted all this evidence to go to the jury, and thus far committed no error; but when the evidence had closed, he compelled the state to elect one of these transactions on which it would rely, and when the election was made, ruled out all the evidence in relation to the others. This made no case for election, and was manifest error, but the defendant could not complain, since it was done on his motion.

2. The defendant put up his wife as a witness, and she was examined as to this charge. The state did not object that she was incompetent, but in failing to do so, that did not deprive it of the right of impeaching her credit, in any of the modes prescribed by the law, including impeach-ment by statements made to others upon material ques-tions in contradiction of her evidence on the trial, the foundation being first laid by calling her attention to the times, places and persons, when, where and to whom such contradictory statements were made. In this respect, she stood as any other witness.

3. Nor was there error in the refusal of the county judge to interpose, when called on by the defendant to do so, and check the counsel of the state in his remarks to the jury in relation to the purpose and effects of impeaching testi-mony. He did not, as we understand from the petition for

*certiorari* and the return thereto, insist that the testimony was direct proof of defendant's guilt, but that it established that fact by overthrowing and destroying the proof on which he relied for his vindication. The argument was ligitimate and entirely proper. If the proof had not the effect contended for, and could not be used for such a purpose, then it was worthless, and served no purpose but to encumber the record.

Such are some of the prominent errors repeated on a variety of occasions and in different forms during the progress of this trial, of which complaint is made; and if there are others, they are of the same character.

4. The juror objected to by defendant showed himself, upon examination for that purpose, competent to serve. The trial was for a misdemeanor, and when the court allowed the juror to be questioned, as in a case of felony, and in addition examined him as to other matters to ascertain his competency and " mental condition," he extended to the defendant all the rights to which he was entitled under the law. Had he been tried in the superior court, he could have stricken from the panel of twenty-four seven jurors, and the state five. But this right does not exist in trials in the county court (Code, §298); there he can get rid of a juror only by showing him subject to " legal exception " on an examination by the court upon his *voire dire;* in the event that the juror is set aside for cause, his place is to be supplied by a talesman. The act, by express terms, takes from the defendant the right of " peremptory challenge." The juror in this instance, although he had once had some trivial misunderstanding with the defendant, had formed or expressed no opinion as to his guilt or innocence from having heard any part of the evidence under oath, had no bias or prejudice for or against him, and was perfectly impartial between him and the state. Besides, the verdict was fully supported by the evidence, and seems unexceptionable in every particular; and had it been otherwise, it would not, in our opinion,

have attained the ends of public justice. Had the defendant been turned loose, he might have been emboldened by his impunity to play the tyrant and bully at will in his family circle and to scandalize his neighbors and disturb their peace by his unmanly and riotous conduct. The execution of this mild sentence for an offense so grave will have the effect, we hope, of shielding and protecting the wife from violence, and will assure quiet to the neighborhood.

5. We might content ourselves by an affirmance of this judgment for these reasons, but as the presiding judge put his dismissal of the *certiorari* upon a different ground, and the question thereby raised will probably arise frequently in the course of the practice, we have deemed it best to lay down a rule upon that subject. The conditions upon which a *certiorari* may be ordered, to examine a criminal case tried in county court, are not entirely unambiguous. This matter is regulated by section 302 of the Code, which requires that " no writ of *certiorari* shall be granted in a criminal case, unless the accused shall have first filed his affidavit setting forth that he has not had a fair trial, and that he has been wrongly and illegally convicted, and unless the party applying shall give such bond and security, or make such affidavit as is permitted in this Code for parties in criminal cases carrying up such cases to the Supreme Court of this state." The first clause of the above quoted section does not leave the time as to the verification of the petition in doubt; this must be done before the writ is granted; but the provision for the other condition, viz., the giving of the bond and security, or the making of the affidavit, is silent as to the time when this is to be done, and also as to the officer by whom bond is to be taken and its amount fixed. In the first case, the future perfect tense is employed, " shall have first filed his affidavit," etc.; in the last, the past is dropped, and the future tense is used, " shall give such bond and security," or " shall make such affidavit " as is permitted when carrying cases on writs of error to the Su-

preme Court. Nor are we much aided by a reference to the act providing for carrying such cases to the Supreme Court, even if we were at liberty to hold that the reference in the section in question embraced anything further than the form and condition of the latter bond. The act simply declares that if the offense is bailable, the defendant shall enter into a recognizance before the clerk, with the security to be approved by him in a sum to be fixed by the presiding judge, conditioned for the personal appearance of the defendant to abide the final order, judgment or sentence of the court. This recognizance operates as a *supersedeas.* Code, §4263. It would seem that the recognizance in this case need not be executed until the bill of exceptions and writ of error are filed with the clerk. So that, if the analogy is followed, the recognizance executed in this *certiorari* was in time, and we are inclined to think that this would be the safer and better practice. At all events, if the *certiorari* had disclosed merits entitling the party to another hearing, we would not have held it properly dismissed on this ground. There can be no doubt, if the bond had accompanied the application for the writ, and the judge of the superior court had approved it, but that it would have been properly filed.

Judgment affirmed.