## JACKSON *vs.* THE STATE OF GEORGIA.

[ This case was argued at the last term, and the decision reserved.]

1. It is not an open question in this court that persons over sixty years of age are competent, when they consent, to act as grandjurors.

2. The defendant had no right to except to the entry of a *nolle prosequi* on the first bill of indictment, unless it had been entered without his consent, after the case had been submitted to the jury, in which event he would have been placed in jeopardy, and could not be so placed again. Nor does it matter that a demand for trial had been entered on the first indictment, provided he was tried on it or on the new indictment, charging the same offense, at the term when the demand was made, or at the next succeeding term.

3. There was no error in allowing the jury lists to be completed by attaching thereto, *nunc pro tunc*, the certificate of the jury commissioners, upon the evidence of the clerk of the superior court and the surviving commissioners, and in overruling defendant's plea in relation thereto.

4. It was right to refuse to suspend the case, in order to enable the defendant to prosecute a writ of error, for the purpose of having

the preliminary questions made determined by this court. The decision complained of, if it had been rendered as claimed by the plaintiff in error, would not have been a final disposition of the case.

5. The defendant introduced no testimony, and his statement did not traverse any material fact put in evidence by the prosecution, but impliedly admitted them and rested on a denial of fraudulent, illegal or felonious intent, and an assertion of his previous conduct and character; and the charges in the indictment, though set out with minute particularity, were sustained by the evidence.

6. The fact that the indictment called the corporation from which funds were embezzled, "The Enterprise Manufacturing Company," while the charter designated it as "Enterprise Manufacturing Company," was not such a variance as rendered the charter inadmissible in evidence. The question is one of identification of the artificial person, and this was sufficient.

7. Where the indictment contained but a single count, charging various acts of the same character which, taken together, went to make up the offense charged, there was no error in refusing to compel the state to elect on which of these acts it would try the defendant.

8. Under an indictment for embezzlement, it was admissible to show that the books of the company, whose funds were embezzled and of which the defendant was president, had been falsified by fraudulent entries, made with a view to conceal the embezzlement, at the defendant's instance and with his knowledge, whether made at the time of the act charged or afterwards. And it was also admissible to show other acts of embezzlement of like character on his part, though not set out in the indictment. These facts bore on the question of intent.

9. The character of the defendant was put in issue by his statement alone; and that was virtually an admission of the charge and an offer of exculpatory facts to mitigate the punishment, which fell more properly within the province of the court than of the jury. The charge to the effect that, if the crime was committed as charged, the previous good character of the defendant would not prevent him from being found guilty, was proper.

10. As a general rule, the state is not bound to prove separately each of the several acts of embezzlement charged, in order to convict, and a failure to prove all of them will not work an acquittal, if some be proved.

11. The charges refused and those given, as set forth in the grounds of the motion numbered from 10 to 15, inclusive, when considered with the entire charge, were not erroneous.

(a.) It makes no difference whether the president took the money directly when it came to his hands, or drew it from banks where

he had deposited it subject to his own checks. The embezzlement would be of the funds and not of the checks which he himself drew.

(*b.*) The making of false entries in the books of the company, or false reports to the directors to conceal the conversion of the money, is a circumstance from which the jury could infer a fraudulent intent.

12. There was no error in sending to the jury-room, at the request of the jury, the books and papers' of the company which had been admitted in evidence, although they contained entries not relevant to the issues, it not appearing that the jury violated the instruction of the court not to inspect any other portions of the books than those admitted in evidence, or that objection to granting the request was made.

13. The indictment sufficiently alleges by whom the property embezzled was entrusted to the defendant, when it states that he was president of this corporation, having the general management of its business and the control of its funds, and having in his trust, custody and control large sums of money belonging to it, etc.

(*a.*) There is such a crime as embezzlement, under the laws of this state, and the facts of this case show that crime.

(*b.*) To specify particularly what money was received and embezzled would be impossible, and such a requirement would render the statute ineffectual.

(*c.*) The material allegations in the pleadings are direct and positive, and neither in the alternative nor objectionable for repugnancy; nor are they loose, vague, indefinite or contradictory. The time and place of the offense are charged with sufficient certainty, and the indictment does not vary from the language of the Code, or fail to state the offense so as to be easily understood by the jury. Nor is there anything in the objection that some of the acts charged in the indictment as constituting the offense of embezzlement are barred by the statute of limitations.

(*d.*) Where there was a continuous series of conversions of money entrusted to the defendant, as president of a corporation, and a falsification of books to conceal those acts, the whole extending through several years, it was competent to charge the offense in a single count of an indictment, and it was not necessary to set out separately each item taken or to charge each in a separate count.

(*e.*) An indictment is sufficient which charges the offense in the language of the Code, or so plainly that its nature may be easily understood by the jury.

March 9, 1886.

Criminal Law.   Embezzlement.   Jury and Jurors.   Indictment.   Practice in Superior Court.   Character.   Evi-

dence. Charge of Court. Before Judge RONEY. Rich-mond Superior Court. April Term, 1885.

Geo. T. Jackson was indicted for embezzlement, and was tried and found guilty. A new trial was refused him, and he excepted. For the other facts, see the decision.

J. C. C. BLACK; FOSTER & LAMAR; TWIGGS & VERDERY; A. J. REQUIER, for plaintiff in error, cited :.

On indictment: 50 *Ga.*, 313 ; 12 *Id.*, 314 ; 60 *Id.*, 88 ; 65 *Id.*, 450 ; 57 *Id.*, 67 ; 46 *Id.*, 208 ; 50 *Id.*, 325 ; 17 *Id.*, 356 ; 24 N. J. L., 924 ; 19 Am. R., 211 ; 33 Tex., 792 ; 9 Biss., 429, (S. C., 12 Myer's Fed. Dec., 2231); 8 Metc., 247 ; Thomp. Lib. Off., 492 ; Code, §4421 ; Cobb's Pen. Code, p. 99 ; 10 Wall., 152 ; 4 Otto, 343 ; 20 C. L. J., 36 ; 2 Russ. Cr., 172 ; 2 Arch. Cr. Pl. and Pr., 283, 298, 353, 560, 1147 ; 2 Bish., 352 ; 2 Whart. Cr. L., 1941, 1818 ; 9 Cush., 284 ; 116 Mass., 1 ; 97 *Id.*, 584 ; 99 *Id.*, 428 ; 1 Denio, 120 ; Desty, 146(a) ; 2 Bish. Cr. L., 828, 368, 480 ; 11 Humph., 39 ; 6 Ala., 845 ; 12 Am. R., 314 ; 21 *Id.*, 175 ; Code, §4714 ; 68 *Ga*, 367 ; 58 *Id.*, 332 ; 65 *Id.*, 410 ; 2 Hawkins P. C., §62 ; 1 Chit. Cr. L., 231 ; 1 Denison's C. Cas., 465 ; 1 How. (Miss.), 260 ; 1 Eng. (Ark.), 165 ; 2 Tex. App., 4 ; 2 Leach, 592, 659 ; 2 Shower, 472 ; 33 Ala., 389 ; 2 Hawkins, 184 ; 101 Mass., 32 ; 3 *Ga.*, 540 ; 1 Bish. Cr. Proc., 520, 320 ; Hale's P. C., 183 ; 1 Porter (Ala.), 124 ; 9 Metc., 134 ; 37 Tex., 360 ; 72 N. Y., 349 ; Whart. Cr. Pl. & Prac., 215 ; 69 *Ga.*, 826.

On the pleas in abatement : Acts 1876, p. 345 ; Code, §§5233, 4250, 3910 ; 70 *Ga.*, 191 ; 39 *Id.*, 118 ; 7 *Id.*, 142 ; 53 *Id.*, 602, 443 ; 63 *Id.*, 165, 397 ; 58 *Id.*, 332 ; 2 Arch. Cr. Pl. & Pr., 583, 1357 ; 2 Russ. Cr., 189, 468 ; Roscoe's Cr. Ev., 451 ; 65 *Ga.*, 449 ; 3 *Id.*, 31, 146 ; Sedgw. St. & Com. L., 267 ; 8 *Ga.*, 28 ; 24 Hun, 501 ; 69 *Ga.*, 73 ; 71 *Id.*, 283.

On admission of evidence : Whar. Cr. L., 283 ; 2 Russ. Cr., 772 ; 4 N. Y., 110 ; 1 Park., 252 ; Code, §3757 ; Whar.

Cr. Pl. & Prac., §110 ; 45 N. Y., 157 ; 12 Cush., 272 ; 2 Va. Cas. (Brock.), 306 ; 1 Leach C. L., 253 ; *Ib.*, 518, 351 ; Russ. & Ry. C. C., 358 ; 2 East C. L., 514 ; 58 *Ga.*, 280 ; 22 *Id.*, 449 ; 16 Tex., 241 ; 33 *Id.*, 107 ; 18 Ill., 52 ; 5 Taunt., 814 ; 63 Ala., 83 ; 57 Iowa, 58 ; 61 Ind., 447 ; 2 Tex. App., 228 ; 7 S. C., 469 ; 10 East, 83 ; 1 Morris, 141 ; 18 Mo., 320 ; 67 *Id.*, 127 ; 28 Ala., 53 ; 24 Ill., 692 ; 7 Blackf., 324 ; 3 Brews., 350 ; 65 Ind., 460 ; 57 *Id.*, 109 ; 61 *Id.*, 447 ; 4 Tex., 228 ; 1 Chitty, 216 ; Addison, 141 ; 7 Ind., 659 ; 6 Mod. R., 168 ; 4 Rich. (S. C.), 297 ; 43 Tex., 577 ; 7 *Ga.*, 294 ; *Id.*, 418 ; 1 Pick., 337.

On charges and refusals to charge : 50 *Ga.*, 591 : 64 *Id.*, 63, 449 ; 68 *Id.*, 818 ; 60 *Id.*, 185 ; 62 *Id.*, 365 ; 63 *Id.*, 459 ; Code, §3248 ; 46 Conn., 385 ; 66 *Ga.*, 315 ; 59 *Id.*, 787 ; 19 *Id.*, 102 ; 10 *Id.*, 106 ; 3 Gr. Ev., §25 ; Whar. Cr. Ev., §67 ; Bish. Cr. Proc., §§1115, 1051, 1060 ; 7 C. & P., 67ŏ ; Russ. Cr., 785 ; Dickin, Quar. Ses., 563 ; 85 N. Y., 373 ; 2 Keyes, 373 ; 5 Jones (N. C.), 65 ; 47 Ala., 603 ; 44 Cal., 288 ; 28 *Id.*, 396 ; 4 Park. Cr., 481 ; 91 Pa. St., 145 ; 16 N. Y., 507 ; 56 *Id.*, 315 ; 6 McLean, 342 ; 2 Brewster, 404 ; 19 O. St., 264 ; 22 *Id.*, 477 ; 17 Mich., 9 ; 34 Ill., 516 ; 48 Iowa, 583 ; 50 *Id.*, 194 ; 49 *Id.*, 158 ; 54 Ind., 400 ; 3 Strobh., 517 ; 50 Ala., 134 ; 52 *Id.*, 411 ; 52 Mo., 251 ; 65 *Ga.*, 149, 598, 642 ; 56 *Id.*, 633 ; 48 Ind., 473 ; 50 Ala., 139 ; 21 *Id.*, 218 ; 30 *Id.*, 28 ; 37 Miss., 327 ; 46 *Id.*, 274 ; 49 Cal., 166 ; 58 *Ga.*, 38 ; 69 *Id.*, 439 ; 67 *Id.*, 767.

BOYKIN WRIGHT, solicitor general ; J. B. CUMMING ; J. S. & W. T. DAVIDSON, for the state, cited :

On demurrer to indictment : Code, §§4421, 4628, 4665 ; 10 *Ga.*, 47, 511 ; 50 *Id.*, 313 ; 1 Bish. Cr. Proc., §§397, 398, 337, 323, 320, 319, 180, 496–513 ; L. R. 1 C. C., 172 ; 11 Cox. C. C., 234, 526 ; Dears., 188 ; 2 Arch. Cr. Pl. & Pr., pp. 1357, 1356, 1341, 1353, 1355 ; 3 Jac. Fish. Dig., §§3174, 3175 ; 12 Cox C. C., 96 ; 1 C. & P., 313, 454 ; 4 Zab. (N. J.), 9 : 64 *Ga.*, 61 ; Hopk. Pen. Code, §§1154, 1168, 2278 ; 118 Mass., 443 ; 18 O. St., 496, 513.

On the 'pleas : Code, §4649 ; 70 *Ga.*, 144 ; 53 *Id.*, 602 ; 75 *Id.*, 747 ; 71 *Id.*, 283 ; 62 *Id.*, 368 ; 56 *Id.*, 463.

On motion for new trial : Acts 1873, p. 173 ; 1 Bish. Cr. Proc., §§682, 328, 189, 251 ; Arch. Cr. Pl. & Pr., pp. 244, 365, *et seq.;* 26 *Ga.*, 611 ; 58 *Id.*, 577 ; 10 *Id.*, 47 ; 18 O., 497 ; 118 Mass., 443 ; Whart. Cr. L., 1063 ; Hopk. Pen. L., §515 ; 3 Gr., Ev., §25 ; 19 *Id.*, 102, 120 ; 61 *Id.*, 294.

HALL, Justice.

George T. Jackson, who, as president of the "Enterprise Manufacturing Company," was entrusted with and had control of the funds belonging to that corporation, was convicted of embezzling, secreting and stealing one hundred and seventeen thousand six hundred and sixty-seven dollars and twenty-four cents of the same, on an indictment framed under section 4421 of the Code, and which alleged, in substance,

" That the said George T. Jackson, in the county aforesaid, on the first day of November, eighteen hundred and eighty-two, being then and there President of The Enterprise Manufacturing Company, a corporation and corporate body under the laws of Georgia, and located in said county and state, and as such president, having the general management of the business and the control of the funds of said company, and having in his trust, custody and control large sums of money belonging to said The Enterprise Manufacturing Company, to-wit : One hundred and seventeen thousand six hundred and sixty-seven $\frac{24}{100}$ dollars, and by him deposited in the Bank of Augusta and in the Commercial Bank of Augusta, corporations under the laws of Georgia, subject to the check of the said George T. Jackson president as aforesaid, and entrusted to the said George T. Jackson, as president aforesaid, to be applied for the use and benefit of said company only, did then and there embezzle, steal, secrete, fraudulently take and carry away the said sum of one hundred and seventeen thousand six hundred and sixty-seven $\frac{24}{100}$ dollars, of the value of one hundred and seventeen thousand six hundred and sixty-seven $\frac{24}{100}$ dollars, of the property of the said The Enterprise Manufacturing Company, by receiving and depositing said money as aforesaid in the banks aforesaid as president aforesaid at divers times and in divers sums, and thereafter, at divers times and in divers sums, checking out the same as president and converting it to his own private use, and by causing to be made in the books

of said company, then and there, false entries to conceal and secrete said embezzlement of said money.

"The following is a list showing, so far as the same is known to this grand jury, the numbers, amounts and dates and orders of the checks signed by the said George T. Jackson, president, and on which the aforesaid money or part thereof was drawn by the said George T. Jackson and by him applied to his own use fraudulent y, and by him embezzled, secreted and stolen as aforesaid. (Here follows a list of the checks, numbering three hundred and two, and covering a period of time from June 7th, 1879, to October 23d, 1882.)

"And the grand jurors aforesaid, on their oaths aforesaid, do further say, that so many of the acts herein alleged as are indicated by checks herein described and bearing date not within the statute of limitations of four years were unknown until a very recent date, to-wit: until on or about the first of September, 1884.

"Wherefore, the grand jurors aforesaid, in the name and behalf of the citizens aforesaid, and on their oaths aforesaid, do charge the said George T. Jackson is guilty of the offense of embezzlement aforesaid in the manner and form aforesaid."

Defendant, on being arraigned, demurred to the indictment upon the following grounds:

(1.) Because said indictment in a single count joins more than one offense committed at different times, and of more than one kind of property at different times.

(2.) Because there is no allegation in said indictment by whom the property alleged to have been embezzled was entrusted to said George T. Jackson; nor that he received the same by virtue of his office as president of said Enterprise Manufacturing Company.

(3.) Because the facts charged in said indictment do not constitute the offense of embezzlement.

(4.) Because there is no such crime or offense under the laws of Georgia as embezzlement.

(5.) Because there is no sufficient description nor specification in said indictment of the property alleged to have been embezzled.

(6.) Because material allegations in said indictment are in the alternative.

(7.) Because said indictment is bad for repugnancy.

(8.) Because said indictment does not state the offense

and the time and place of committing the same with sufficient certainty.

(9.) Because said indictment does not charge the offense in the terms and language of the Code of the State, nor so plainly that the nature of the offense charged may be easily understood by the jury.

(10.) Because some of the acts in said indictment alleged as constituting the said offense of embezzlement are barred by the statute of limitations in such cases made and provided.

(11.) Because said indictment is loose, vague, indefinite, uncertain and contradictory, all of which he is ready to verify.

Which demurrer, after argument, was overruled by the court upon each and every ground.

Defendant then filed pleas in abatement, which were also overruled, but which, in most instances, it will suffice to state generally, as the questions made by several of them had been recently decided adversely to him in other cases brought to the same term of this court, and which will be hereafter more particularly referred to. These were properly abandoned on the hearing. Three of them, viz., two in relation to disqualified grand jurors, and one in reference to entering a *nolle prosequi* and preferring another indictment after demand for trial had been made upon the former, were disposed of upon general and the remaining one upon special demurrer. This is that plea, and the answer to the same:

"For further plea in abatement of said indictment, defendant says that Mathew Rice, Lawrence Adams, Daniel F. Cargil and Frank A. Calhoun, whose names appear as grand-jurors upon said bill of indictment, and who acted as such in finding said bill, are and were incompetent to act as such, because their names do not appear upon any certified list of grand-jurors of said county, nor in the book certified, as by law required, but their names only appear upon a book in, upon and to which there is no certificate, and said book contains no certificate signed by the clerk of said court, the ordinary and jury commissioners, as required by §3910 (f) of the Code of Georgia; and the names of the other grand-jurors upon said bill of indict-

Jackson *vs*. The State of Georgia.

ment appear in said uncertified book, and also upon a book properly certified, but, by law, the list of grand-jurors must have been revised by the jury commissioners since the date of the certificate to said book attached; therefore defendant says that said bill was not found by a legally constituted grand-jury."

"That admitting, as it does by its demurrer, that the list upon which appear the names of the grand-jurors named in said plea was not, at the time of the making of said plea, certified in accordance with section 3910 (f) of the Code of Georgia, the state of Georgia says that the failure to certify said list as aforesaid is not sufficient to render said jurors incompetent.

"In answer to the third plea of abatement says that the names of the grand-jurors mentioned in the third plea in abatement were, at the time of their being summoned, as grand-jurors and their service as grand-jurors, borne on a list only (duly?), made up by the jury commissioners of said county. That their names were deposited by the said jury commissioners in the grand-jury box. That said list was transcribed in a book by the clerk of the superior court of said county, and said book placed in the office of said clerk with the names alphabetically arranged; and that said list has been properly revised by the jury commissioners, and that the commissioners are present in court and have properly certified that the list is correct, and that the list is correct and contains all the names contained in the grand-jury box and traverse jury box."*

The court, after hearing the evidence of the clerk and four of the six jury commissioners, the other two being dead, directed the jury list to be completed by having the same certified and signed, which being done, the following proceedings were had, viz.:

"It appearing to the court that James Tobin, Charles S. Bohlor, Chas. H. Sibley and Walter A. Clark, four of six jury commissioners who revised the list of grand and traverse jurors at the time of the last revision prescribed by law, are here in court, the two other jury commissioners, Chas. Spaeth and Joshua K. Evans, having, since the date of said revision, departed this life, and that said surviving commissioners are ready to certify that the list made out at said revision and now presented to them, contains all the names placed in the grand and the traverse jury boxes respectively at said last revision. And the clerk of this court, who is *ex officio* clerk of said board of jury commisioners, is also ready to certify to said list, and that the names of the grand-jurors mentioned in the third plea in

---

*The quotation beginning with "That admitting" etc., formed part of a demurrer and answer filed by counsel for the state to the plea in abatement. (Rep.)

abatement are in the jury box by them revised and on the list made out by them at said revision.

"It is ordered that said commissioners and said clerk be allowed to certify said list *nunc pro tunc.*"

The court having overruled the plea in abatement by sustaining the demurrer thereto, and having passed the order allowing said list to be certified *nunc pro tunc*, the defendant made the following motion, viz.:

" The defendant having filed a special plea in abatement on the grounds therein set forth, the court having announced its decision sustaining said demurrer to said plea, to which the defendant desires to except and take to the Supreme Court upon writ of error, to review said decision sustaining said demurrer to said special plea, counsel for defendant come now upon 'the rendering of said decision and move the court to stay the further progress of the case until they, for said defendant, can prepare and present a bill of exceptions and have the same heard and passed upon in the Supreme Court of the state."

Which motion the court overruled. Whereupon the defendant filed a bill of exceptions *pendente lite*, which was allowed and certified according to law, excepting to said rulings and orders of the court upon the following grounds:

(1.) The court erred in overruling the demurrer of defendant filed in said case.

(2.) The court erred in sustaining the demurrer of the state to the pleas in abatement.

(3.) The court erred in allowing the jury commissioners and clerk to testify, and in permitting them to certify to the list *nunc pro tunc.*

(4.) The court erred in overruling the motion of defendant to suspend said case until a bill of exceptions to his decision sustaining the demurrer to the pleas in abatement could be prepared, presented and heard in the Supreme Court of the state.

The court overruled the motion made for a new trial, upon the following grounds:

(1) to (3.) Because the verdict is contrary to the law and the evidence.

At the same term and pursuant to an order of court, the defendant amended the motion for new trial as follows:

(1.) Because the court overruled the demurrer, filed by defendant in said case, on each and every ground thereof.

(2.) Because the court sustained the state's demurrer to the pleas in abatement, filed by defendant in said case, and ordered said pleas to be stricken.

(3.) Because the court allowed four of the six jury commissioners, two of said commissioners being dead, and the clerk of the court to certify to the list of grand-jurors, *nunc pro tunc*, the said clerk and jury commissioners having been sworn and examined in open court, as will fully appear by the brief of evidence filed in said case with this motion.

(4.) Because the court, after sustaining the demurrer to the special pleas in abatement, overruled a motion, submitted in writing by defendant's counsel, to stay the further progress of the case until counsel could prepare and present a bill of exceptions and have the same heard and passed upon in the Supreme Court.

(5.) Because the court admitted in evidence, over the objection of the defendant, an act to incorporate the Enterprise Manufacturing Company in the state of Georgia, approved February 14, 1873; the ground of objection being that the act of incorporation named a different company from that named in the indictment, in indictment the company being called *The* Enterprise Manufacturing Company, and in the act of incorporation Enterprise Manufacturing Company.

(6.) Because the court overruled the motion of defendant, made before the introduction of any evidence, that the state be required to elect on which item or offense in the indictment it would proceed.

(7.) Because the court admitted evidence of "drops" of other sums than that laid in the indictment, and at periods subsequent to the time covered by the said indictment, the same having been objected to by defendant, on the grounds

v 76-36

that said evidence related to acts other than those charged, which were the subject-matter of new offenses, and that the same was prejudicial to defendant and irrelevant, illegal and inadmissible.

(8.) Because the court charged the jury at the request of counsel for the state as follows: " Again I charge you in relation to evidence of good character of defendant, that its office is to assist the jury in reaching a conclusion in cases where doubt may exist as to whether the defendant is guilty or not guilty of the act charged. If the jury be satisfied by proof that the crime was committed by the defendant, of course his previous good character can in nowise excuse him from the penalty of his crime. Crime, like everything else, must have its beginning. Every accused must, at some time, have been free from guilt. Hence, you are not to conclude, that in a case when the crime has been satisfactorily proven, that because the defendant previously enjoyed a good character, he is therefore not guilty of the offense proven."

(9.) Because the court charged the jury as follows: " Again, as to the taking, it is not necessary for the state to prove to you that the whole amount charged in the indictment was taken. If any part of the sum charged is proven, that is sufficient."

(10.) Because the court refused to charge the jury as follows: " Before the jury can find the defendant guilty, they must find him to be guilty as charged, and if the indictment charges that the alleged offense was committed by receiving and depositing the money, then the state must prove that the defendant, as a part of the offense, did receive and deposit the money as alleged, and if the evidence fails to prove these allegations, the state has failed to make out its case, and you should find the defendant not guilty."

(11.) Because the court refused to charge the jury as follows: " The indictment charges the defendant with the offense of embezzling money. If the evidence should

satisfy you that the defendant embezzled checks instead of money, then you must find him not guilty of the offense charged in this indictment."

(12.) Because the court refused to charge as follows: "Embezzlement imports the reception of the property mentioned in the Code, §4421, belonging to a corporation by an officer thereof, who receives it by virtue of his office and fraudulently appropriates it before it reaches the possession of the corporation. After money has got into the possession of the corporation, and while in its possession, it may be stolen, but cannot be embezzled. Money would be in the possession of the company if it was so placed or deposited that, in case of Jackson's death or resignation, it would at once have been under the control of his successor."

(13.) Because the court refused to charge as follows: "If the jury find from the evidence that the money alleged to have been embezzled was in the possession of the company, and while thus in the company's possession and under its control, the defendant took the property and used it, he could not commit the offense of embezzlement, for after it was in the company's possession, it might be stolen, but not embezzled."

(14.) Because the court charged as follows: "If you find from the evidence that the defendant did, while president of the Enterprise Manufacturing Company, take the money entrusted to him, by virtue of his office, belonging to the company and fraudulently converted it to his own use, and then concealed the taking and misappropriation of the funds from the company as charged in the indictment, he is guilty of the offense charged and you ought to so find."

(15.) Because the court charged as follows: "Again, if you find from the evidence that it was the duty of the defendant to make financial statements to the board of directors of the true condition of the company, and he made those statements, concealing therein the fact of his use of

the money, you may infer therefrom that, when the money was converted, the conversion was made with fraudulent intent, and find him guilty. If you find from the evidence that any of the books of the company contained false entries known to or consented to by defendant, and which entries were intended to conceal from the board of directors the knowledge of the fact that any money had been converted, you may infer therefrom that the conversion was with a fraudulent intent."

(16.) Because the court allowed to be sent to the jury-room the following books and papers: Cash book B. and C. of Enterprise Manufacturing Company, statement book of said company, the checks set out in the indictment, with stub-books, statement to Woodward, Baldwin & Co. and Latham, Alexander & Co., and the book of minutes of said Enterprise Manufacturing Company,—there being entries on said cash and statement books and stub-books and minutes not offered in evidence.

The jury having sent for the books and papers, the court sent them by the sheriff, with instructions that only such parts as had been introduced in evidence were to be inspected by the jury.

As the questions made by the demurrer to the indictment are repeated in the motion for a new trial, we will defer any notice of them until we come to that motion, and address ourselves at once to the special pleas in abatement.

1. It is no longer an open question in this court, that persons over sixty years of age are competent, when they consent, to act as grand-jurors. *Carter's* case, 75 *Ga.*, 747; *Danforth's* case, *Ib.*, 614, and perhaps others.

2. The defendant had no right to except to the entry of a *nolle prosequi* on the first bill of indictment, unless it had been entered without his consent after the case had been submitted to the jury, as in that event he would have been once in jeopardy, and could not have been so placed again. *Doyal's* case, 70 *Ga.*, 134, 142, *et seq.* The fact that a trial has been demanded on first indictment,

does not vary or affect the rule, nor would it sustain a plea of *autrefois acquit*, or one setting up that the party was once in jeopardy. So he is tried at the term when the demand is made or the next succeeding term of the court for the offense charged in the indictment, he has had all the right given to him under the law (Code, §4648), and it seems to us immaterial, in any point of view, whether he was tried upon the indictment pending at the time when the demand was made, or upon another charging the same offense. In the event of his failure to have a trial when he is entitled to it according to this provision of the Code, he is then entitled to an absolute discharge and acquittal of the " offense " charged in the indictment. Had he not been tried either on the old or newly found indictment for the offense of embezzling, stealing, secreting and fraudulently taking and carrying away the funds belonging to the Enterprise Manufacturing Company, of which he was president, and who, as such, had charge of its money or other effects, then he would have been entitled to his discharge; and if called upon to answer further, he might have successfully defended himself by reason of the failure of the state, without sufficient legal cause or excuse, to comply with his demand. But he was tried for this identical offense and at the term when, according to law, he should have been tried, and when he demanded a trial; he had no right to demand it at an earlier term, and he could not properly insist upon this defence before the expiration of the term when the trial was had; he could not set up that he had made a demand for trial in bar of the indictment before that time.

3. There was no error in allowing the jury lists to be completed by attaching thereto *nunc pro tunc* the certificate of the jury commissioners, upon the evidence of the clerk of the superior court and the surviving commissioners, and in overruling defendant's plea in relation thereto. *McLain's* case, 71 *Ga.*, 283; *Mikell's* case, 62 *Id.*, 368; *Carter's* case, 56 *Id.*, 463.

4. We know of no law or practice of the courts which would have authorized the suspension of the cause at this stage in the proceedings to enable the defendant to prosecute a writ of error to this court for the purpose of having the preliminary questions which he makes determined before proceeding with the trial upon the merit of the case. The motion to that effect was both unprecedented, and, as we think, directly in the face of the well-settled policy enjoined by the law. Such a practice would lengthen instead of terminating litigation, and the bringing of cases to this court by piece-meal has always, as we are informed, been discountenanced, except in certain specified cases, as the granting or refusal of an injunction and the like. No cause can be brought to this court upon bill of exceptions so long as the same is pending in the lower court, unless the decision or judgment complained of, if it had been rendered as claimed by the plaintiff in error, would have been a final disposition of the case. Code, §4250, and the many cases cited and others occurring since the publication of that edition (1882) of the Code. Had the questions made by these preliminary proceedings been determined as the plaintiff in error insists they should have been, the result would have been a postponement, rather than a final disposition of the cause.

We shall now proceed to examine such of the grounds of the motion for a new trial as are disconnected with the points which the demurrer to the indictment raises and as (do not) relate to matters already determined in disposing of the pleas in abatement.

5. The defendant in the indictment introduced no evidence, and relied solely upon his statement made to the jury when the state had closed its case against him. This statement did not contravene or traverse a single material fact put in proof by the prosecution; so far from this, it impliedly admits their truth and seeks to avoid their effect by denying that he converted to his own use the funds of the corporation with any fraudulent, illegal and feloneous

intent.   He appeals to the jury in pathetic and eloquent terms to shield him from the grave charges preferred against him, on account of his public spirit, his liberality to this enterprise in its commencement, his high social position, the services he rendered his country on the field of battle, and his previous unblemished reputation and unimpeached character.   So far as concerns the legal merits of his defence, that was urged upon purely technical grounds, and which, as we shall hereafter see, was as unavailing as that insisted on in his statement; that although the facts constituting the offense were set out in the indictment with minute and unnecessary and (in view of the rule requiring them to be strictly proved as laid) with dangerous particularity, yet a careful inspection of the record must satisfy even the most hypercritical that there was a full compliance with this strict requirement, and that every allegation in the pleadings of the state was sustained by the evidence, and if the indictment was sufficient, as it will hereafter appear it was, then the verdict of the jury, so far from being contrary to law or evidence, or against both, was not only authorized, but imperatively demanded. This disposes of all the grounds of the original motion for a new trial.

6.  The 5th ground of the amended motion complains that the charter of the Enterprise Manufacturing Company was admitted in evidence over defendant's objection, which was that the act of incorporation named a different company from that specified in the indictment, it being called in the latter "The Enterprise Manufacturing Company," while in the former it is designated simply as "Enterprise Manufacturing Company."   In this we fail to perceive any such variance between the allegation and proof as that insisted on.   Does the indictment, by its description, sufficiently identify the artificial person it mentions as the same being as that which is created by the act of the legislature offered and received in evidence?   Of this, we think, there can scarcely be a doubt.   The only percepti-

ble difference in the two descriptions consists in the use of a capital "T" in the orthography of the definite article "the" in the one and a small "t" in the other, immediately preceding the name of the corporation. The question is one of the identity of the party whose property was embezzled, and not merely one of the identity of a name, and neither the court nor jury could have been at any loss, from this slight variance, to determine what person was referred to. 1 Bishop's Cr. Pro., §682; Comm. *vs.* Deadham, 16 Mass., 147, 148; *Goode's* case, 70 *Ga.,* 752.

7. The indictment contained but a single count, and the court could not compel the state to elect on which of the various acts specified therein, and which, taken with others, went to make up the offense charged, it would try the defendant. This was not a case for election. In *Memmler's* case, determined at the last term of the court (75 *Ga.,* 576), where various acts of the same character were charged in one count in an indictment for misdemeanor, we held that the court erred in holding that the state should elect on which one of these acts the defendant should be tried. As more directly in point, *Johnson's* case, 26 *Ga.,* 611; *Stewart's* case, 58 *Id.,* 577. This question will be more fully noticed in discussing the points raised on the demurrer to the indictment.

8. The exception to the evidence taken by defendant in the 7th ground of the motion for a new trial is not tenable. It was pertinent to show that the books of the company had been falsified by fraudulent entries, made with a view to conceal the embezzlement, whether they were made at the time of the act or afterwards. It is sufficient that they were made at the defendant's instance and with his knowledge. Nor was evidence of other acts of embezzlement of like character inadmissible, though they may not have been set out in the indictment; they were competent to fix his guilt, if they tended to show the criminal intent with which the act charged was committed. *Bulloch's* case, 10 *Ga.,* 47, 54 *et seq.;* Brown's case, 18 Ohio, 497, and other

authorities cited by counsel for the state. The rule under which the testimony was admitted is well settled, and generally, if not universally, accepted as correct, and in most cases of the kind is perhaps indispensable to the ascertainment of truth.

9. The defendant, by his statement, puts his character in issue; this question is nowhere else made by the testimony; the statement itself is a virtual confession of guilt, and may be likened to a plea of guilty and an offer of exculpatory evidence to mitigate the punishment. It seems to us that it could have had no other effect, and for that purpose, it was rather for the consideration and guidance of the judge than the jury. As to this subject, the jury could exercise no discretion; that is vested by the law, and wisely so, within certain prescribed limits, in the judge, who is not bound to regard any recommendation made by the jury in relation to the matter, though he may do so if he deems it proper; but the jury made no such recommendation in this case. Under the circumstances, a more restricted charge than that given as to the effect of previous good character may have been sustained as being more applicable and appropriate to the facts in evidence, but, be this as it may, the charge is warranted by the general rules of law, and by the previous decisions of this court which exemplify such rules. *Epps's* case, 19 *Ga.* 102, 103, 119, 120, covers the point and sustains the charge. Hopkins's Penal Laws, §515. This disposes of the 8th ground of the motion.

10. There was no error in charging the jury as set forth in the 10th ground of the motion for a new trial. The state was not bound, as a general rule, to prove separately each several act of embezzlement charged, in order to convict the defendant. As well insist that, where an indictment for larceny charged the taking and stealing of various items of property or money, or other valuable thing, there could be no conviction, unless the jury was satisfied from the evidence that the defendant fraudulently took

and carried away each thing mentioned in the indictment.

11. The charges refused and the charges given, as set forth in the remaining grounds of the motion, from the 10th to the 15th ground, inclusive, were properly refused or given. This will be the more evident when compared with the instructions contained in the entire charge, which comes up in the record, and which deals with every question arising upon the law and evidence, clearly, impartially and, as it seems to us, in accordance with the law as long settled, and which at this day can scarcely give rise to controversy. What difference can it make whether the defendant took the money directly when it came into his hands, or drew it from banks where he had deposited it subject to his own check? He could in no sense be said to have embezzled checks; the checks were drawn by him and used as a means of getting the money; the money was under his control, whether it was in the coffers of the company or of banks in which he had placed it. These facts were precisely proved as laid in the indictment. Whether he took the money before it reached the company, or while it was in his hands and under his control as president of the company, or after it was in the custody of the company, in either event he had charge of it in trust for the company, and who, while thus entrusted with it, embezzles, secretes and fraudulently takes and carries it away, offends against the provisions of §4421 of the Code. Hopkins's Pen. L., §1165. And the making of statements to the board of directors, under the rules of the company, of its financial condition, by the defendant, so as to conceal from them his conversion of their money to his own use, is a circumstance from which the jury are authorized to infer a fraudulent intent in thus converting the money. So of false entries in the books of the company kept by defendant's direction and with a like purpose. We perceive no error in this charge.

12. There was no error in sending to the jury-room, at their request, while they were deliberating on the case, the

books and papers belonging to the Enterprise Manufacturing Company, which had been admitted in evidence in the course of the trial, although the books may have contained entries not relevant to the issues,—there being no evidence going to show that they violated the instructions of the court not to inspect any other portions of the books than those given in evidence, and it not appearing that objection was made by defendant or his counsel to complying with the request of the jury.

13. This brings us lastly to the consideration of the questions made by the demurrer to the indictment. We are of opinion that the indictment does allege by whom the property embezzled was entrusted to the defendant, when it states that he was president of this corporation, having the general management of its business and the control of its funds, and having in his trust, custody and control large sums of money belonging to it, etc. From this it was legitimately inferable that he received the money by virtue of his office as president.

Surely there is, under the laws of Georgia, such a crime or offense as embezzlement, or else the section of the Code on which this indictment is founded is without meaning, and numerous decisions of this court amount to nothing. If this offense exists under our laws, and the facts charged in the indictment do not constitute it, then it would be difficult to conceive what facts would make a case of embezzlement. To specify particularly what money was received and embezzled would be impossible, and such a requirement would give impunity to the crime. No defaulting agent with the least shrewdness could ever be brought to trial or condemned, under these hard conditions, to punishment. Evidence sufficient to convict could not be obtained, and the law would be a dead letter in the statute book. The material allegations in the pleadings are direct and positive. We do not think the objection that they are in the alternative well founded, and are unable to see that they are bad on account of repugnancy, or that they are

loose, vague, indefinite or contradictory, or that the offense
and the time and place of committing the same are not
stated with sufficient certainty, or that it varies from the
terms and language of the Code, and fails to state it so plainly
that it may not be easily understood by the jury.     There
is nothing in the objection that some of the acts charged
in the indictment as constituting the offense of embezzle-
ment are barred by the statute of limitations.

There is but one point remaining to be considered, and
that is, that the indictment in a single count joins more
than one offense committed at different times and more
than one kind of property alleged to have been embezzled
at such times.     It is insisted in argument that this single
count contains no less than three hundred and twenty-one
distinct felonies, for each of which the defendant would be
liable to indictment; but such is not our apprehension of
its meaning and purpose.     In reply to a similar objection,
the Supreme Court of Ohio, in Brown's case (18 Ohio state,
497, 512, 573), say, "Nothing is better settled than the rule
that a general verdict upon several counts will be sustained
where either count is good.     We perceive no reason why
this rule is not equally applicable to that part of the ver-
dict finding the amount of money embezzled, as to that
part of it which finds the general guilt of the defendant.
Both are charged, and both must be found, to enable the
court to pronounce the proper penalty.     Now each count
of the indictment charges Brown with participating in the
embezzlement of $20,036.   The jury have found him guilty
on all four of the counts. In theory, the indictment charged
Brown with four several embezzlements, and the jury thus
found him guilty of embezzling four times that amount.
If this were true in fact, the court would inflict four sev-
eral punishments.   But it is only a fiction, and the several
counts are only so many forms of charging a single offense.
Brown cannot claim the benefit of the fiction without sub-
mitting to its burden.   For the purposes of this question,
then, the indictment is to be regarded as charging a single

act of embezzlement, as if there were a single count, and that the amount of the single embezzlement was $20,036. The jury have found a less amount. They have found him guilty of embezzling $20,000, as charged in either of the counts of the indictment. The court will look to see if there is one good count among them, and if there is, the court will inflict the punishment as upon that count. Still the court will only inflict one punishment, because there is, in fact, but one offense." Again, in answer to a similar objection, "that the evidence shows there was, in fact, an indefinite number of separate and distinct acts of embezzlement, and that the jury could only properly find the amount embezzled at one time, or at most the amount embezzled at four several times, corresponding with the four counts of the indictment, whereas, they have found the aggregate amount," "the answer is," reply the court, "that the evidence shows a continuous series of conversions of the money in pursuance of a conspiracy. Such evidence is sufficient to support a finding by the jury of the aggregate sum as the amount of a single embezzlement. It was, in fact and in law, a single embezzlement. Were it otherwise, the particular conversions could never be ascertained or proven, and there would have to be, in some cases, almost as many counts as there were dollars in the money embezzled."

So in this case there had been many wrongful and fraudulent conversions of the money of this company by its president, extending through several years, and when he began to apprehend detection and exposure, in order to baffle it, resort was had to the alteration and falsification of the books, in order the more effectually to secrete and conceal this huge defalcation. Though this series of misappropriations may have commenced with a purpose to use the money and to restore it to the company, and the defendant may, for a time, have hoped that he would be able to carry out this intention, yet when he found this impossible, he resorted to what he conceived the most effectual

means to hide his crime, and then and there his guilt was consummated, and he became criminal beyond a doubt. Had the indictment stated simply the amount embezzled at divers times during the period covered by these peculations, and set forth the means resorted to in order to embezzle, steal, secrete and fraudulently take and carry away the money belonging to this corporation, and which came into the hands of the defendant as its president, to whose custody it was committed, and who had, by virtue of his office, these funds in his custody, etc., and that he did thus embezzle, etc., the entire amount converted, it would, under the Code, have been sufficient, and would certainly have been preferable to one setting out, with minute and unnecessary particularity, the circumstances attending the transaction from its commencement to its consummation. The means of proof would have been simpler and more direct, and the many annoying and embarrassing questions raised by this record would have been avoided. The purpose of our statute is to avoid just such complications, and to afford a simple and straightforward method of establishing guilt, by abolishing the particularity in pleading required by the common law and declaring that every indictment or accusation of the grand jury shall be deemed sufficiently correct which states the offense in the terms and language of the Code, or so plainly that its nature may be easily understood by the jury. Code, §4628. This provision, if followed as it should be, would sweep out of existence such niceties in pleading as have enabled many a guilty man to escape just punishment for his crimes; and while it thus preserves the rights of the state, and is promotive of the enforcement of necessary public laws, it imposes no burdens and hardship upon the accused, deprives him of none of his rights, and in no respect embarrasses him in defending himself against the charges preferred, and enables him to vindicate himself upon meritorious grounds, in the only way that vindication can be of any real value. To escape by a technicality does not establish innocence, at least accord-

ing to the enlightened and just estimate of the world, and does not restore the party to his former standing among his fellow-men. The foregoing views are amply sustained by the citation of authorities on the briefs of the eminent counsel who have so faithfully, fully and ably argued this cause, and which will appear with the reporter's statement of facts.

Judgment affirmed.