*Henry R. Daniel, solicitor,* contra.

---

## 1281.   WESTFALL *v.* THE STATE.

1. An indictment which charges in one count a violation of section 420 of the Penal Code, in running six freight-trains on a railroad in the county on Sunday, is not demurrable on the ground that it charges six distinct and separate offenses in one count.

2. Where a railroad company operates a railroad through several States, with separate divisions of transportation, and a different superintendent of transportation for each division, the superintendent of transportation having charge of the transportation for the division which embraces that part of the railroad on which a freight-train is run on the Sabbath day in violation of the statute is the officer designated by the statute to be indicted for such violation.

3. Where a freight-train running on a bona fide, practicable schedule, leaving the starting point before Sunday, scheduled to reach its destination before eight o'clock Sunday morning, is detained by unavoidable circumstances, so that it can not reach its destination before eight o'clock Sunday morning, it can, nevertheless, continue to run after eight o'clock Sunday morning, until it reaches its destination, without violating the law.

4. Where a freight-train has left its starting point upon a schedule giving it ample time to reach its destination within the time allowed by the statute relating to the running of trains on Sunday, the right to continue to destination, when prevented by unavoidable delays from completing its trip within the time required by the regular schedule, is not affected by the fact that the unavoidable delay has lasted such a length of time as, in railroad parlance, to "kill" that schedule and require that the delayed train be ordered to run to its destination on an extra schedule.

5. The verdict is without evidence to support it.

Indictment for running freight-train on Sunday, from Douglas superior court—Judge Edwards. June 15, 1908.

Argued October 5,—Decided October 12, 1908.

Westfall was tried and convicted in the superior court of Doug-las county, for a violation of section 420 of the Penal Code, re-lating to the running of freight-trains on the Sabbath day through any county in this State. The charging part of the indictment is in the following language: "he, the said A. H. Westfall, be-ing then and there superintendent of transportation of the South-ern Railway Company, and, as such officer, having charge of the business of the transportation department of that portion of the Southern Railway Company, embracing the railroad running from Atlanta in the State of Georgia through Douglas county to the city of Birmingham in the State of Alabama, did, on the 14th day of April, 1907, said day being the Sabbath day, unlawfully run and cause to be run in and through Douglas county, over said railroad, six freight-trains of the Southern Railway Company, all going east, and each drawn by an engine pulling a train of freight-cars, all of said freight-trains arriving and departing from the city of Douglasville during the afternoon of said date." The defendant demurred to this indictment, on the grounds, (1) that six different offenses are charged in one count of the indictment, to wit, the running of six freight-trains; and (2) that the indict-ment does not charge the defendant with being the superintendent of transportation of the Southern Railway Company, but only of that portion thereof between the cities of Atlanta and Birmingham. The court overruled this demurrer, and the defendant excepted pendente lite.

The material part of the evidence is as follows: The defend-ant was the superintendent of a division of the Southern Rail-way, known as the Atlanta division, extending from Weems, Ala-bama, to the city of Atlanta; and the movement of the trains of this division was under his supervision and management, he be-ing the officer in charge of the transportation of trains in that division. There was a general superintendent of transportation of all the divisions of the Southern Railway Company, who had supervisory charge of all the division superintendents of transpor-tation. The six freight-trains in question ran through Douglas county after eight o'clock a. m. on the Sunday charged in the indictment, arriving at their destination, Atlanta, at different hours in the afternoon and evening of that Sunday. The six

freight-trains left their initial points in the State of Alabama on Saturday, running on a schedule which would have allowed each one of them time to reach its destination before eight o'clock Sunday morning, if not detained by unavoidable delays. These trains were all prevented from making their trips in schedule time, and were delayed at Waco, by the fact that there was no water in the tank at that place, to supply the engines; and the tank was not supplied with water at Waco until about noon on Sunday. The water tank at Waco was empty Saturday night, because the pool from which water was pumped into the tank was pumped dry on Saturday night about six o'clock, and there was not sufficient water in the pool to pump into the tank, until Sunday morning, when the employee of the company in charge of the pumping station began to pump, and filled the tank as rapidly as could be done, for the purpose of supplying the engines. The failure to keep water at Waco prevented the freight-trains from complying with their regular schedule, and caused them to be delayed more than twelve hours; and when they left Waco on Sunday, about noon, they were ordered to make the run to Atlanta on what was known as an "extra schedule." The employee of the company at Waco whose duty it was to keep the tank supplied with water did not notify any one connected with the movements of the trains of the fact that the supply of water had failed, and those in charge of the freight-trains did not know of the failure of water, until they had arrived at Waco. There was another water tank between Atlanta and Waco, forty-one miles west of Villa Rica, but the engineers, when they arrived at Waco, did not have sufficient water to continue to run to this water tank. The train dispatchers were directed by the superintendent of transportation not to start any freight-trains on Sunday, and not to start them on a schedule unless they had schedule time to reach their destination by eight o'clock Sunday morning; and when these trains were started from their initial points on their regular schedule, the railroad authorities did not know that the water supply was insufficient at Waco; and they did not find it out until the next Sunday morning, when the freight-trains were at Waco.

Besides the general grounds in the motion for a new trial, there are three grounds assigning error in certain excerpts from the charge of the court to the jury, the first of which is as follows: "A

freight-train running over a road on Saturday night, if the time of its arrival at destination, according to schedule by which it started on the trip, be not later than eight o'clock Sunday morning, this will be a justification for the running of the train on the railroad up to eight o'clock Sunday morning. And if it is shown that a train starts on a schedule which would put [it] into the place of destination by or before eight o'clock Sunday morning, or not later than eight o'clock Sunday morning, and the train starting on such schedule runs up till that time, then the defendant would not be guilty." The error assigned in this charge is, that it "limited the right to run a freight-train up to eight o'clock Sunday morning;" and it is contended that "the court should have further charged the jury that if the train would have reached its destination by eight o'clock Sunday morning if run on schedule time, yet if the same was unavoidably delayed, it could still be run to its destination, although to do so would require its movement later than eight o'clock Sunday morning."

The second ground assigning error in the charge of the court is covered by the demurrer as to the defendant not being the proper official designated as liable to an indictment for a violation of its terms.

The third ground is that the court erred in charging as follows: "In reference to schedules, I charge you, that if a train is started from Birmingham that will put it into Atlanta, the place of destination, before eight o'clock, and, on account of delays that arose along the line, that schedule was annulled by the superintendent of transportation or the officer having charge of the business of that department of the railway company, if that schedule was annulled and said train was started in this State on a new schedule, or by orders running it extra, then it would have no right to run any distance after midnight Saturday night, would have no right to run up till eight o'clock, and would have no right to run after eight o'clock; and if you find in this case that these trains named in the bill of indictment were run on a schedule made up after midnight Saturday night, and they were started on such schedule in this State after midnight Saturday night, then they would have no right to run any distance; and if the other elements of the offense are made out, that A. H. Westfall is the officer named in the statute and he is not justified

in one of the two ways that I have called your attention to, then he would be guilty." The objections made to this charge are that "it was not properly adjusted to the evidence in this case," and, "under the evidence in this case, it is not the law."

*Maddox, McCamy & Shumate,* for plaintiff in error.

*W. K. Fielder, solicitor-general,* contra.

HILL, C. J. (After stating the foregoing facts.)

1. It is entirely proper and in conformity with good pleading to charge in one count that the defendant violated the penal statute in running six freight-trains through the county on the same Sunday. While, strictly speaking, the running of each train may have been a violation of the law, yet we think the running on the same day of six trains might well have been treated as but one offense. Certainly this did not embarrass the defendant in making his defense or deprive him of any right. In fact this method of pleading could not be otherwise than beneficial to the defendant. *Wingard* v. *State,* 13 *Ga.* 396; *Walker* v. *State,* 118 *Ga.* 772 (45 S. E. 621); *Jackson* v. *State,* 76 *Ga.* 551 (7); *Young* v. *State,* ante, 827 (62 S. E. 558).

2. The superintendent of transportation, having charge of the business of the transportation department of that portion of the Southern Railway Company over which the freight-trains were alleged to have been run in violation of the statute, was the proper person to be indicted. Where a railroad system runs through several States, has separate divisions, and has a separate superintendent of transportation for each division, we think the superintendent of transportation of the division in which the law is claimed to have been violated is the proper officer to be indicted, under the terms of the statute (Penal Code, §420). The court, in considering a demurrer on this ground, could judicially recognize that the Southern Railway Company was such a system; and the demurrer admits that the defendant was its superintendent of transportation having charge of the business of transportation of that portion or division of its road over which the freight-trains were alleged to have run in violation of the law, on the day specified in the indictment. The section of the code defining this offense designates, as the officer to be indicted, the one who is primarily responsible for the running of freight-trains; and it can not be doubted that the superintendent of transportation of

the division embracing that part of the railroad where the alleged violation of law occurred fits the designation made by the statute. *Vaughan* v. *State,* 116 *Ga.* 841 (43 S. E. 249).

3. The charge of the court complained of in the first ground of the amended motion for a new trial was error. If a freight-train leaves its starting point upon a practicable schedule which would bring it to its destination before eight o'clock on Sunday morning, of course the justification provided by the statute for the running of a train up to eight o'clock Sunday morning would be complete. The preamble to this act of the legislature shows, that the intention was to allow a train running on such schedule as above stated, when unavoidably detained or delayed by acci-. dents or other circumstances, to continue running to its destina-. tion, although to do so might require the running of the train on Sunday morning after eight o'clock. In other words, a complete defense is established when the evidence shows that the freight-train left its initial point within the time provided by the statute, and on a schedule that was practicable and could, reasonably be complied with, and in the particular instance was prevented from being run according to schedule and within the time provided by the statute, because of unavoidable delays not due to bad faith of those who had charge of the movement of the train in question. The charge complained of instructed the jury that they could find the defendant guilty if it appeared, from the evidence, that the train ran after eight o'clock on Sunday morning, regardless of the time of departure from its starting point, and regardless of all unavoidable delays that may have prevented the train from making its regular schedule, although in other respects it had fully conformed to the requirements of the statute. See Acts of 1874, p. 97; *Brand* v. *State,* 3 *Ga. App.* 628 (60 S. E. 339).

4. The charge complained of in the third ground of the amended motion for a new trial was, in our opinion, erroneous, for both the reasons stated. It was not adjusted to the evidence, because there was no evidence whatever that the regular schedules on which the trains started from their initial points were annulled by the superintendent of transportation, or by any officer who had charge of the business of that department of the railroad. The evidence was that the delay of over twelve hours at Waco of

the trains in question temporarily displaced the regular schedules and made it necessary for the trains not to leave Waco except under special orders. But the fact that such delay, under the rules of the company, amounted to a temporary displacement of the regular schedule, and the substitution therefor of an extra schedule, adjusted to the situation, made necessary by such delay, did not amount to an annulment by the superintendent of transportation of the regular schedule. If the freight-trains in question started from their initial points on a schedule which was practicable, and which could be reasonably run within the terms of the statute, and were unavoidably delayed in making such schedule, they would have the right to run to their destination, regardless of the length of such unavoidable delays. The fact that, according to railroad technicalities, the regular schedule was "killed" by delays lasting longer than twelve hours, and that the freight-trains, after such unavoidable delays, started under new orders, does not affect in any manner the question. Of course a freight-train can not start from its initial point on Sunday, but if it starts from its initial point before Sunday, and on a schedule which gives it ample time to reach its destination in this State before eight o'clock Sunday morning, it has a right to do so; and if, after starting from its initial point before Sunday, it meets with unavoidable delay, and is thus prevented from making its regular schedule on which it started, it nevertheless has a right to continue its run to its destination after eight o'clock Sunday morning; and any delays that are unavoidable and not caused by bad faith of the officers of the company having charge of the movements of such trains, whatever may be the length of such delays, do not destroy this right. The court, in the charge excepted to, considered the start from Waco after the delays as a start from the initial point, and that a start made on Sunday constituted a violation of the statute. We think this construction of the law was, for the reasons stated, erroneous.

5. We have examined the evidence in this case very carefully, and we have concluded that it fails to show any violation of the statute in question. There is no dispute that the schedules upon which these trains started from their initial points gave them ample time to reach their destination within the limitations of the law. There is no dispute that the trains were delayed at

Waco by a failure to get water at that point, which was the customary place for getting water, or that those in charge of the movements of the trains did not know that the water could not be obtained at this regular place, until the trains reached there. It may be that the employee of the company at Waco whose duty it was to keep the tank supplied with water could have notified the officers in charge of the movements of the trains that the water could not be procured at Waco; but this he did not do, and the trains went to Waco, the employees in charge of them reasonably relying upon the fact that at that point they would be able to get water. Under all the circumstances of this case we think the delay was unavoidable, and was not caused by bad faith of the defendant or of those who were in charge of the running of the trains, so as to render the defendant amenable to the penal statute, and that the verdict in this case is without any evidence to support it, and should be set aside as contrary to law.

*Judgment reversed.*