THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
RAFAEL ROSARIO VEGA, Defendant and Appellant.

No. 16096.   Submitted May 12, 1958.—Decided July 31, 1958.

*José R. Fournier* for appellant.   *J. B. Fernández Badillo, Attorney General (José Trías Monge, Ex-Attorney General, Arturo Estrella* and *Ramón C. Ruiz Sánchez, Ex-Fiscal* and *Ex-Assistant Fiscal,* respectively, *of the Supreme Court,* on the brief) for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Rafael Rosario Vega was sentenced to serve from one to five years' imprisonment in the penitentiary for the crime of embezzlement (felony), consisting in that said defendant "in Cataño, Puerto Rico . . . in the period comprised between July 1 and December 31, 1952, inclusive, unlawfully, wilfully, maliciously, and with criminal intent and with the intention of defrauding, appropriated to his own use and embezzled the sum of one hundred forty-seven dollars and twenty-three cents ($147.23), which amount was given to

him in United States currency by the employees and laborers of the Municipality of Cataño, Puerto Rico, as their contribution to the Federal Security Fund . . . in order that the herein accused might pay the aforementioned sum of money to said Federal Social Security Fund, the aforementioned Rafael Rosario Vega having appropriated for his own benefit said sum of money, thus defrauding said laborers and employees of the Municipality of Cataño of the aforementioned sum of one hundred forty-seven dollars and twenty-three cents ($147.23)."

From the evidence of The People, which was the only one introduced at the trial, it appears that the accused was Secretary-Auditor of the Municipality of Cataño. In the period comprised in the information several employees of said municipality gave some small sums of money to the accused to be applied to the payment of the Federal Social Security. Dolores Rivera Figueroa paid $3.15 that was deducted from her salary by the Treasurer of the Municipality; Pedro Montañez gave $6.75 to the accused; Carmen Cardín gave him $7.20; Basilio Meléndez López gave him $2.75; Salvador Rivera Ortiz gave him $3.60 plus $1.50 more; Pedro Rodríguez Morales paid his Federal Social Security directly to the accused but does not remember the amount of money he gave him; Etanislao Mojica gave him $2.67. Eloísa Urbiztondo was the Treasurer of the Municipality and the one in charge of paying the salary to the employees. According to her testimony, in October, November and December she deducted 1.5 per cent from the salary of said employees for Federal Social Security. The amount thus deducted, amounting to $75, was given to the accused although he does not remember what part of said amount she gave him before December 31, 1952 and what part she gave him after that date. On January 16, 1953, Gabriel Sicardó Rosario substituted the accused in the position of Secretary-Auditor of the Municipality of Cataño. He testified that when he began to carry out his duties, no social

security funds had been entered in the books nor was there any money in the Municipality for the payment of social security nor had any money been deposited in the bank or in any other place designated for that purpose. He also testified that he had a conference with the accused and the latter told him that he (the accused) had appropriated to himself during the period of July 1 to December 31, 1952, about $100 or $147 belonging to the employees of the Municipality and proceeding from their contributions to Social Security, and that he intended to repay that amount with some money that the Municipality owed him. Lastly, this witness testified that the accused has not paid the amount indicated.

It is not revealed in what capacity the accused became depositary of the funds designated for the Federal Social Security. Nevertheless, there is no controversy as to the fact that the embezzled funds belonged to the employees and that they were not public funds.

On appeal, the accused charges as sole error that the trial court found him guilty of the offense of embezzlement (felony) and sentenced him according to this conviction. His theory is that from the evidence presented by the district attorney it does not appear that the amounts which he misappropriated were individually more than $100 each. He alleges that even accepting that the total sum of all the misappropriations was for more than $100, he could not be convicted of embezzlement (felony) because none of the misappropriations, taken separately was for an amount over $100. He maintains that all the transactions can not be grouped in order to charge him with the commission of a felony and that according to the evidence introduced, the most he can be convicted of is for one or more offenses of embezzlement (misdemeanors).

He is not right. The offense of embezzlement constitutes "the fraudulent appropriation or misappropriation of property by a person to whom it has been confided."

Section 445 of the Penal Code (33 L.P.R.A. § 1721). And according to § 455 of the same Code (33 L.P.R.A. § 1731), "Every person guilty of embezzlement is punishable in the manner prescribed for feloniously stealing property of the value of that embezzled. . . ." The Penal Code classifies larceny and decrees punishment in the following manner:

> "Grand larceny is larceny committed in either of the following cases:
> "1. When the property taken is of the value of one hundred dollars and upwards.
> "2. When the property is taken from the person of another." (Section 428 of the Penal Code, 33 L.P.R.A. § 1683.)

Grand larceny is punishable by imprisonment in the penitentiary and is, therefore, a felony. Section 430 of the Penal Code (33 L.P.R.A. § 1685). Larceny in other cases is petit larceny and is punishable by fine or by imprisonment in jail, or both. It is therefore, a misdemeanor. Sections 429 and 431 of the Penal Code (33 L.P.R.A. § § 1684 and 1688, respectively).

The fundamental difference between embezzlement and larceny consists in that in the former, the accused is legally in possession of the property while in the latter he takes it illegally from the possession of another. In embezzlement the crime is committed after the property has been legally in possession of the accused, that is, at the moment of the misappropriation. On the contrary, in larceny, the crime is committed at the very moment of the taking. *People* v. *Ríos,* 69 P.R.R. 774; *People* v. *Díaz et al.,* 23 P.R.R. 239; *People* v. *Kent,* 10 P.R.R. 325.

■■■ The fact that the embezzled funds were received by the accused on different occasions and in different sums, does not determine whether said accused committed one or several offenses of embezzlement because such a determination depends on the appropriations or misappropriations made. Several appropriations or misappropriations com-

mitted on different dates and which involve different sums of money, if they are separate and distinct transactions and the appropriations are not prompted by the same design, the same purpose and the same impulse, then each transaction constitutes a separate offense of embezzlement. *People v. Hatch*, 109 Pac. 1097; *People v. Stanford*, 105 P. 2d 969; *People v. Hewlett*, 239 P. 2d 150.

In the case at bar the evidence does not show whether the accused appropriated the funds all at once or at different times and in many items. All we know is that he fraudulently appropriated to his own use the aggregate amount of said funds.

In *People v. Pérez*, 47 P.R.R. 724, 742, we said:

"What happens is that as the legislators and the courts have to cope with an offense which is generally committed by experts in accounting who make it very difficult to fix the exact date of each one of the appropriations making up the final defalcation which is discovered, the indictment for a series of appropriations has been permitted as if all of them constituted only one offense. . . ."

The general rule adopted by the majority of the United States courts, including the ones of California, is to the effect that the embezzlement of funds in small sums belonging to only one person, for a period of time, if prompted by only one plan or design, constitutes only one offense. *People v. Fleming*, 32 P. 2d 593 (Cal.) ; *People v. Cox*, 36 N. E. 2d 84, 86 (New York 1941) ; *Willis v. State*, 33 So. 226, 233–34 (Ala. 1926) ; *Craig v. State*, 116 So. 272 (Fla. 1928) ; *Norman v. State*, 160 S. E. 522 (Ga. 1931) ; *Camp v. State*, 122 S. E. 249 (Ga. 1924) ; *State v. Peters*, 253 Pac. 842, 844 (Idaho 1927) ; *State v. Dawe*, 177 Pac. 393, 395–96 (Idaho 1918) ; *People v. Heilemann*, 199 N. E. 792 (Ill. 1935) ; *State v. Shour*, 95 S.W. 405, 408–09 (Mo. 1906) ; *State v. Pratt*, 11 S. W. 977, 978–79 (Mo. 1889) ; *Bolln v. State*, 71 N. W. 444, 448 (Neb. 1897) ; *State v. Bickford*, 147 N. W. 407, 417–18 (N. D. 1913) ; *Brown v. State*, 18

Ohio St. 497, 513–14 (1869); *Young* v. *State*, 184 N. E. 24 (Ohio 1932); *Moore* v. *State*, 50 P. 2d 746, 750–52 (Okla. 1935); *Fulkerson* v. *State*, 189 Pac. 1092, 1101 (Ore. 1920); *State* v. *Reinhart*, 38 Pac. 822, 826–27 (Ore. 1895); *State* v. *Gibson*, 108 Pac. 349 (Utah 1910); *State* v. *Linden*, 17 P. 2d 635, 639 (Wash. 1932); *State* v. *Dix*, 74 Pac. 570, 571–72 (Wash. 1903); *State* v. *Wetzel*, 83 S.E. 68, 72–73 (W.Va. 1914); *State* v. *Moyer*, 52 S.E. 30, 35 (W.Va. 1905).

In *People* v. *Fleming, supra,* the accused was president of a corporation authorized to transact business as a broker. He was accused of embezzlement (felony) consisting in that, according to the first count, on May 2, 1930 he unlawfully took away ten shares of the Chrysler Motor Corp. of the value of $591.25, the personal property of Mr. Stewart, and according to the second count, on May 3, 1930 he unlawfully took away ten shares of the same corporation of the value of $500, the personal property of Mrs. Stewart. The Stewarts had arranged with the accused to buy the aforementioned shares in instalments. After having paid all the instalments no delivery of stock was made. Notwithstanding that the total price exceeded $200, defendant's contention was that since none of the instalment payments exceeded $200, he was guilty of a misdemeanor and not a felony. The court stated as follows:

" . . . . It appears, however, that these payments of successive installments upon a single contract did amount to more than $200 on each contract. The exact time when the misappropriation was completed is not material, and perhaps is not established by the evidence, more than that the installments were paid at certain specified times and that the stock was not delivered when the payments had been completed and delivery was due. We think that the case is controlled by the rule stated in *People* v. *Mills B. Sing*, 42 Cal. App. 385, 396, 183 P. 865, 869, where it was said: 'The law is that, if the different asportations from the same owner are prompted by one design, one purpose, one impulse, they are a single act

without regard to time.' Or as was said in People v. Hatch, 13 Cal. App. 521, 534, 109 P. 1097, 1103: 'It may happen that an aggregate amount may finally be appropriated by one act which was received in many items and at different times.' "

The ruling is laid down in *State v. Noland*, 19 S. W. 715, 722, thus:

" . . . . The fiduciary relation enables the officer to convert funds and securities to his own use, and at the same time renders it almost impossible for the state, in advance, to charge when and how it was done. Embezzlement often consists of a series of acts, done at different times, but with a common design; and ultimately the one fact appears that there is a shortage. All that can be said is that there is a certain deficit; the public funds have been embezzled to a certain amount. To require the state to select some one fact, and elect to make a case on that alone, would often result disastrously, and crime go unpunished. Consequently, when the defendant is apprised of the charge of the deficit, of the amount claimed, of the official character in which he received it, and his conversion thereof, he has notice of the nature and cause of the accusation. So here the defendant was appraised that the state charged that he had embezzled $32,745.69; that it was moneys he had received by virtue of his office as state treasurer; that this deficit would be shown by the books of his office; that proof of the charge in either count involved the proof of all, and the proof of all would be required to prove one; it was substantially one transaction. In the nature of things, he alone could account for what he had done with the money. It is true the state traced three different sums into his hands, but, for aught that this record discloses, he converted it all at one time. The receiving [of the money] is one thing, the conversion another. To say that merely because the prosecuting attorney made the charge in three counts, that this made three distinct crimes, would, in our opinion, give the statute an impractical construction. . . ."

The impossibility of proving the exact date on which each appropriation or misappropriation was made, as has occurred in the case at bar, justified the necessity of our adopting the ruling of the American courts to the effect that a series

of small misappropriations, when prompted by a common design or plan, constitute only one offense of embezzlement.[1]

The rule does not change because the misappropriated money belonged to several persons and not to a single person. Some cases hold that as many crimes are committed as there are victims of defalcation. See 32 Am. Jur. 892 and cases annotated in 31 A.L.R. 693, 723 and 42 L.R.A. 967. To arrive at this conclusion they establish an analogy with the civil right and the civil responsibility of the defalcator. Nevertheless, the weight of authority rejects it. Thus in *Henry* v. *United States*, 263 Fed. 459, 462–63, it was said:

"Defendant is here charged with two offenses, based upon a single act of conversion. The theory of the prosecution is that, since part of the stock was owned by John Helmus and part by his mother, though converted by a single act, the ownership establishes two independent offenses. This is not the law of this jurisdiction. In Hoiles v. United States, 3 MacArthur, 370, 36 Am. Rep. 106, where a defendant had been convicted and sentenced for three separate larcenies, because the goods stolen belonged to three different parties, but were stolen from the same room at the same time, the court said:

'All the judges who heard the argument are of opinion that where the larceny consists of a single act, and the stolen goods belong to different persons, it is unnecessary that there should be separate informations or indictments, and that in such case there can only be a single conviction and sentence.'

"The commission of a crime is an offense against the public, and is punished, not to protect the property rights of the injured individual, but rather as a vindication of the public law. The name of the owner appears in a proper indictment

---

[1] We do not have any doubt that the misappropriations made by the accused were prompted by one common plan or design. This is evidenced by the admission of the accused to one of the witnesses for the prosecution, in the sense that he had appropriated the funds designated for Social Security with the idea of paying them with some money that the Municipality owed him.

for the purpose of identifying the ownership of the property stolen or converted.

"The particular ownership of the property which is the subject of a larceny does not fall within the definition and is not of the essence of the crime. The gist of the offense consists in feloniously taking the property of another; and neither the legal nor the moral quality of the act is at all affected by the fact that the property stolen, instead of being owned by one, or by two or more jointly, is the several property of different persons. The particular ownership of the property is charged in the indictment, not to give character to the act of taking, but merely by way of description of the particular offense. State v. Hennessey, 23 Ohio St. 339, 13 Am. Rep. 253.

"The principle is sustained by the overwhelming weight of authority that the stealing or conversion of property belonging to different persons at the same time and place constitutes but a single offense, and should be prosecuted as such. Dalton v. State, 91 Miss. 162, 44 South. 802, 124 Am. St. Rep. 637; State v. Warren, 77 Md. 121, 26 Atl. 500, 39 Am. St. Rep. 401; Clemm v. State, 154 Ala. 12, 45 South. 212, 129 Am. St. Rep. 17; State v. Clark, 46 Or. 140, 80 Pac. 101; People v. Johnson, 81 Mich. 573, 45 N. W. 1119; State v. Larson, 85 Iowa, 659, 52 N. W. 539; State v. Congrove, 109 Iowa, 66, 80 N. W. 227; State v. Mickel, 23 Utah, 507, 65 Pac. 484; State v. Emery, 68 Vt. 109, 34 Atl. 432, 54 Am. St. Rep. 878; State v. Mjelde, 29 Mont. 490, 75 Pac. 87; Furnace v. State, 153 Ind. 93, 54 N. E. 441; Wilson v. State, 45 Tex. 76, 23 Am. Rep. 602; Ackerman v. State, 7 Wyo. 504, 54 Pac. 228; State v. Morphin, 37 Mo. 373."

In view of the foregoing, we conclude that the error assigned was not committed and consequently the judgment appealed from will be affirmed.